**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| AUTOTEL, a Nevada corporation; and RICHARD L. OBERDORFER, <br><br>  Plaintiffs, <br><br> vs. <br><br> NEVADA BELL TELEPHONE COMPANY d/b/a/ AT&T of NEVADA (f/k/a SBC) <br><br>  Defendant. | 2:07-CV-1423-ECR-GWF <br><br><br><br><br> **Order** |

The Telecommunications Act of 1996 ("the Act"), 47 U.S.C. § 151 et. seq., aims to increase competition and to open up telephone markets on a nationwide basis. To this end, the Act requires "incumbent local exchange carriers" to negotiate "interconnection agreements" with "competitive local exchange carriers." Incumbent carriers generally are those large telecommunications carriers already in place, while competitive carriers generally are those newer carriers seeking access to a market.

Plaintiff Autotel, a Nevada based wireless telephone service provider, has had an analog interconnection agreement with Defendant Nevada Bell Telephone Company d/b/a AT&T of Nevada ("AT&T") since 1996. Autotel now seeks to interconnect with AT&T's digital facilities. The parties cannot come to an agreement. Autotel sought relief with the Public Utilities Commission of Nevada

("PUCN"), which rejected Autotel's complaints for various procedural deficiencies. Autotel then filed suit in this Court.

Currently pending before the Court is AT&T's Amended Motion to Dismiss (#37), filed on August 27, 2008. Autotel filed an Opposition (#42) to the motion on September 16, 2008, and AT&T filed a Reply (#44) on September 30, 2008. The motion (#37) is ripe and will be granted for the reasons set forth below.

## I. Statutory Framework

The Telecommunications Act, in conjunction with the Nevada Administrative Code ("NAC"), sets forth detailed provisions describing how incumbent local exchange carriers and requesting competitive carriers may agree to interconnect in Nevada. The parties are first presented an opportunity to negotiate the agreement voluntarily. 47 U.S.C. § 252(a)(1). If, at any time, the parties cannot come to an agreement, then they may ask a state commission to mediate their differences. Id. § 252(a)(2). After the parties have been negotiating an agreement for four months, any party may petition the state commission "to arbitrate any open issues." Id. § 252(b)(1). While negotiating the terms of an interconnection agreement, § 251(c) of the Act imposes a "duty to negotiate in good faith" on both incumbent local exchange carriers and requesting telecommunications carriers. Id. § 251(c)(1).

In Nevada, a party may petition the state commission, the PUCN, to mediate a dispute under NAC § 703.294. After four months of negotiation, NAC § 703.286 delineates how to petition the PUCN to arbitrate any "unresolved issues." After the PUCN has made a

2

determination in a case, an "aggrieved" party may bring an action in federal court to challenge whether the agreement comports with the requirements of § 251 of the Act. 47 U.S.C. § 252(e)(6).

## II. Factual & Procedural Background

Autotel seeks to offer wireless telephone services in competition with AT&T. (P.'s First Amended Complaint "FAC" ¶¶ 2, 3 (#30).) AT&T is the monopoly provider of local telephone services near Pahrump, Nevada. (Id. ¶ 4.) Currently, Autotel is "interconnected" with AT&T through five analog loops, which allow Autotel access to AT&T's local telephone customers. (Id. ¶ 12.) Autotel now wants access to AT&T's digital network. (Id. ¶ 13.)

Autotel and AT&T have attempted to negotiate and mediate the agreement to no avail. (Id. ¶ 14.) AT&T allegedly insists that Autotel must accept AT&T's standard terms and conditions or it will not agree to any new interconnection agreement, which is unacceptable to Autotel. (Id. ¶¶ 20, 24.)

On August 8, 2006, Autotel filed a complaint with the PUCN, requesting that the PUCN find that AT&T failed to negotiate an interconnection agreement in good faith and order AT&T to interconnect Autotel's facilities with AT&T's network. (Id. ¶ 26.) On August 11, 2006, the PUCN rejected the complaint without prejudice, citing Autotel's failure to comply with the "Commission's rules and regulations for filings of this nature." (Letter from PUCN to Autotel (#38-5).) The PUCN recommended that Autotel consult with legal counsel, as its submission indicated "a lack of required expertise and familiarity with the Commission's rules and

3

1 regulations." (Id.)  Autotel filed an amended complaint with the
2 PUCN on August 21, 2006, which the PUCN rejected without prejudice
3 on August 22, 2006.  (Letter from PUCN to Autotel (#38-3).)  Again
4 the PUCN "strongly recommended" that Autotel consult or retain legal
5 counsel in the matter.  (Id.)

6     After twice being rebuffed by the PUCN, Autotel filed suit in
7 this Court.  Autotel now alleges that AT&T has refused to negotiate
8 a new interconnection agreement in good faith, has denied Autotel a
9 digital interconnection, has failed to connect Autotel on an interim
10 basis, and has overcharged Autotel for services rendered, all in
11 violation of the Telecommunications Act of 1996.

12     AT&T filed an amended motion to dismiss (#37) on August 27,
13 2008, arguing that Autotel must first present its claim to the PUCN
14 before this Court can hear the matter.[1]  Autotel opposed (#42) the
15 motion on September 16, 2008, contending that it had presented its
16 claim to the PUCN, which wrongly rejected its complaint.  AT&T filed
17 a Reply (#44) on September 30, 2008.

18     The critical question before the Court is whether Autotel has
19 properly presented its claim to the PUCN.  Both parties agree this
20 inquiry is dispositive of the motion to dismiss, and both parties
21 agree that Western Radio Services Co. v. Qwest Corp., 530 F.3d 1186
22 (9th Cir. 2008), controls the present case.
23 //

---

[1] Although Autotel's most recent complaint alleges three causes of action, AT&T's motion asks only to dismiss the first claim, where Autotel avers that AT&T has failed to negotiate in good faith in violation of 47 U.S.C. §§ 251(c) and 252(a).

4

### III. Motion to Dismiss Standard

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) will only be granted if the complaint fails to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007). On a motion to dismiss, "we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990)) (alteration in original). Moreover, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the non-moving party." In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1403 (9th Cir. 1996) (citation omitted).

Although courts generally assume the facts alleged are true, courts do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). Accordingly, "[c]onclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss." In re Stac Elecs., 89 F.3d at 1403 (citation omitted).

Review on a motion pursuant to Fed. R. Civ. P. 12(b)(6) is normally limited to the complaint itself. See Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001). If the district court relies on materials outside the pleadings in making its ruling, it must treat the motion to dismiss as one for summary judgment and give the non-moving party an opportunity to respond. Fed. R. Civ. P. 12(d); see United States v. Ritchie, 342 F.3d 903, 907 (9th Cir.

5

2003). "A court may, however, consider certain materials -- documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice -- without converting the motion to dismiss into a motion for summary judgment." Ritchie, 342 F.3d at 908.

If documents are physically attached to the complaint, then a court may consider them if their "authenticity is not contested" and "the plaintiff's complaint necessarily relies on them." Lee, 250 F.3d at 688 (citation, internal quotations and ellipsis omitted). A court may also treat certain documents as incorporated by reference into the plaintiff's complaint if the complaint "refers extensively to the document or the document forms the basis of the plaintiff's claim." Ritchie, 342 F.3d at 908. Finally, if adjudicative facts or matters of public record meet the requirements of Fed. R. Evid. 201, a court may judicially notice them in deciding a motion to dismiss. Id. at 909; see Fed. R. Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

### **IV. Discussion**

AT&T presents two arguments in support of its motion. First, AT&T asserts that a claim for a violation of a duty to negotiate in good faith must be addressed by the PUCN before a federal court can hear the matter. Second, AT&T contends that there is no private

6

1  right of action for alleging a failure to negotiate in good faith
2  under the Telecommunications Act.

3   In <u>Western Radio</u>, the Ninth Circuit held that a requesting
4  carrier — such as Autotel — cannot sue an incumbent local exchange
5  carrier — such as AT&T — for a failure to negotiate in good faith
6  until the state utilities commission has addressed the good faith
7  claim first. 530 F.3d at 1189. The court acknowledged that while
8  it was unusual to require one private party to exhaust its
9  administrative remedies before bringing suit against another private
10 party, policy factors favored this requirement. <u>Id.</u> at 1199.

11   In light of <u>Western Radio</u>, both Autotel and AT&T recognize that
12 Autotel must first present its claim to the PUCN before proceeding
13 in federal court. Autotel, however, maintains that it submitted its
14 good faith claim to the PUCN, but that the PUCN wrongly dismissed
15 the claim without prejudice on account of procedural faults. (P.'s
16 Opp. at 8 (#42).) AT&T argues that Autotel merely touched base with
17 the PUCN, but that the PUCN did not make any final determination as
18 to Autotel's claim. (D.'s Mtn. to Dismiss at 10 (#38).)

19   Autotel has not properly presented its case before the PUCN.
20 The PUCN has made no determination of Autotel's good faith claim
21 either on the merits or in any substantive fashion. Autotel has
22 submitted two complaints to the PUCN that failed to comply with the
23 regulations set forth in the Nevada Administrative Code. Autotel's
24 PUCN complaints read like complaints in a civil suit. The NAC,

28                                7

however, requires a supply of different information.[2]  E.g., NAC § 703.286 (enumerating how to petition the PUCN for arbitration); NAC § 703.290 (explaining how to petition for approval of a negotiated agreement).

This half-hearted attempt at following the detailed procedures set forth in the NAC is not sufficient.  The PUCN has dismissed both complaints without prejudice.  Both times the PUCN told Autotel to resubmit the complaints, and both times the PUCN even offered to apply Autotel's paid filing fee toward any new filing.

Were we to conclude that Autotel's efforts were sufficient, parties seeking to avoid the state regulatory process would have an easy row to hoe: they would need only to present a noncompliant application with the PUCN, wait for the claim to be dismissed, and then file suit in federal court.  This administrative bypass would undermine the statutory and regulatory framework underlying the Telecommunications Act by making the provisions optional.  See W. Radio Svcs. Co., 530 F.3d at 1201 (requiring prudential exhaustion before bringing claim in federal court to avoid "bypass of an administrative remedy") (quoting Gonzales v. Dep't of Homeland Sec., 508 F.3d 1227, 1234 (9th Cir. 2007)).  Federal courts would then be called upon to shoulder the responsibilities outlined in the Act, deracinating the statute's structure.

---

[2]Autotel explains that its NAC filings were filed pro se, and the filings should thus be read more liberally.  The Court, however, is not being asked to review a PUCN determination, nor is the PUCN a party to this action.  Thus, we need not decide whether the PUCN should have, or actually did, read Autotel's complaints with a more liberal standard.

8

Autotel argues in passing that it submitted its "good faith" claim to the PUCN "pursuant to federal law," purportedly making the NAC regulations "not apply to Autotel's submissions." (P.'s Opp. at 9 (#42).) We reject this argument. As is obvious from NAC § 703.280, the NAC regulations apply to "<u>any</u> request or petition submitted . . . pursuant to sections 251 and 252 of the Telecommunications Act of 1996." <u>Id.</u> (emphasis added). Autotel's first cause of action clearly is rooted in §§ 251 and 252 of the Telecommunications Act. (<u>See</u> FAC ¶ 30, First Cause of Action (#30) (alleging that "AT&T has failed to meet the good faith mandate of 47 [U.S.C.] §§ 251 and 252").) As such, the state regulations apply to Autotel's good faith claim, and Autotel must first seek relief with the PUCN before bringing its good faith claim in this forum.

## **V. Conclusion**

Because Autotel has not properly presented its good faith claim to the PUCN, AT&T's motion to dismiss the claim will be granted. We need not address the alternative argument of whether 47 U.S.C. § 207 provides a private right of action for a claim of lack of good faith until the PUCN has made a determination in the case. <u>See</u> <u>W. Radio Svcs. Co.</u>, 530 F.3d at 1203.

//
//
//
//
//

9

1       **IT IS THEREFORE HEREBY ORDERED THAT** Defendant's Amended Motion
2  to Dismiss First Cause of Action (#37) is **GRANTED.**
3
4
5  DATED: JANUARY __30__, 2009.
6
7                                              _____
                                                UNITED STATES DISTRICT JUDGE

10